UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENA ELIZABETH GIST,

               Plaintiff,                      Case No. 3:19-cv-13169
                                                  District Judge Robert H. Cleland

v.                                           Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20), and AFFIRM THE COMMISSIONER'S DECISION

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (ECF No. 18), **GRANT** Defendant's cross-motion for

summary judgment (ECF No. 20), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, Lena Elizabeth Gist, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for disability insurance (DI)

benefits. This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (ECF No. 18), the Commissioner's cross-motion for summary judgment (ECF No. 20), Plaintiff's reply (ECF No. 21), and the administrative record (ECF No. 15).

### A.   Background and Administrative History

Plaintiff filed the DI application at issue in this appeal in June 2017, alleging that her disability began on April 1, 2011, just two days shy of 41 years of age.  (R. at 172.)  In her disability report, she alleged that certain conditions (fibromyalgia, herniated discs, sciatica, first stage breast cancer, bladder spasms, high blood pressure, and migraines) limit her ability to work.  (R. at 188.)  In September 2017, the SSA found that Plaintiff was disabled as to her SSI claim, with an established onset date of June 27, 2017 (R. at 85-90, 97 [Title XVI]), but not disabled as to her DI claim (R. at 91-96, 98 [Title II]).

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 106-107.)  On June 7, 2018, ALJ Allison Dietz held a hearing, at which Plaintiff and a vocational expert (VE), Scott B. Silver, testified.  (R. at 32-79; *see also* R. at 227.)  On November 5, 2018, ALJ Dietz issued an opinion, which recognized the amended alleged onset date (AOD) of September 29, 2015 and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 17-31, 1039.)

Plaintiff submitted a request for review of the hearing decision. (R. at 168-171.) However, on July 29, 2019, the Appeals Council denied Plaintiff's request for review. (R. at 6-11.) Thus, ALJ Dietz's decision became the Commissioner's final decision. Plaintiff requested and was granted an extension of time to file a civil action (R. at 1-5) and timely commenced this matter on October 28, 2019.

### B.   Plaintiff's Medical History

The relevant period in this appeal is Plaintiff's amended AOD of September 29, 2015 – *i.e.*, the date of a lumbar spine MRI (R. at 308-309) – to her date last insured (DLI) of December 31, 2016. The administrative record contains approximately 817 pages of medical records, which were available to the ALJ at the time of the November 5, 2018 decision. (R. at 31, 229-1045 [Exhibits 1F-10F].) These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her AOD of September 29, 2015 through her DLI of December 31, 2016. (R. at 22.) At **Step 2**, the ALJ found that, through the DLI, Plaintiff had several severe impairments (morbid obesity, cervical and lumbar disorders of the spine, chronic pain, and migraines). (*Id*. at 23.) At **Step 3**, the ALJ found that, through the DLI, Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id*. at 23-24.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and

determined that, through the DLI, Plaintiff had the RFC:

> . . . to perform sedentary work [*i.e., exertional limitations*] except she
> can occasionally balance on uneven terrain and slippery surfaces,
> stoop, kneel, crouch, crawl, and climb ramps and stairs but cannot
> climb ladders, ropes, or scaffolds [*i.e., postural limitations*].  She must
> avoid all exposure to extreme cold, vibration/vibrating tools, and
> workplace hazards such as unprotected heights and moving
> mechanical parts [*i.e., environmental limitations*].  She requires an at-
> will sit-stand option at her workstation that does not take the claimant
> off-task more than ten percent of the workday [*i.e., exertional and/or
> concentration, persistence or pace (CPP) limitations*].  She requires a
> cane for ambulation to/from the workstation and for prolonged
> ambulation [*i.e., exertional limitation*].  In the free hand, she can carry
> only nomi[n]al weights (files, books, a cup of coffee, etc.) [*i.e.,
> exertional and/or manipulative limitations*].

(*Id*. at 24-26.)  At **Step 4**, the ALJ determined that, through the DLI, Plaintiff was

unable to perform any past relevant work as a mail handler.  (*Id*. at 26.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ found

that, through the DLI, there were jobs that existed in significant numbers in the

national economy that Plaintiff could have performed.  (*Id*. at 26-27.)  The ALJ

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

therefore concluded that Plaintiff was not under a disability, as defined in the

Social Security Act, at any time from April 1, 2011, the AOD, through December

31, 2016, the DLI.  (*Id*. at 28.)[2]

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

---

[2] It appears that the ALJ mistakenly used the original onset date in this concluding
statement, rather than the amended AOD of September 29, 2015, which was used
in the Step 1 heading.  (*Compare* R. at 22, *with* R. at 28.)

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff takes issue with the ALJ's:  (1) Step 3 findings; (2) RFC; and, (3) assessment of Plaintiff's subjective symptoms.  (ECF No. 18, PageID.1120-1132;

*see also* ECF No. 21.)  Plaintiff has the burden of proof on each of these statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### 1.    Step 3

The ALJ's Step 3 discussion expressly mentions Listing 1.04 as to back disorders, SSR 02-01p as to obesity, and SSR 12-2p as to fibromyalgia/chronic pain syndrome.  (R. at 23-24.)  Plaintiff argues that the ALJ's Step 3 findings as to Listings 1.02 – which was not expressly mentioned in the written decision – and 1.04 are "not supported by substantial evidence."  (ECF No. 18, PageID.1120-1124; ECF No. 21, PageID.1162-1164.)

### a.    Listing 1.04 - "Disorders of the spine"

The ALJ explained that Plaintiff's "back disorders do not meet or medically equal listing 1.04 . . . [,]" because, "[t]here is no evidence of nerve root compression with the required characterizations [*i.e., Listing 1.04A*], spinal arachnoiditis [*i.e., Listing 1.04B*] or lumbar spinal stenosis with pseudoclaudication that results in inability to ambulate effectively [*i.e., Listing 1.04C*]."  (R. at 23.)  This is not as conclusory as Plaintiff would have the Court believe.  (ECF No. 18, PageID.1121.)

Plaintiff bears the burden on this issue.  She cites "critical evidence relevant to this Listing that the ALJ failed to discuss[,]" such as:  (i) April 28, 2014 progress notes, which refer to a February 2011 back MRI that showed "[m]ultilevel

foraminal narrowing worse on the left at L4-L5 with questionable compression of the exiting left L4 nerve root[,]" (R. at 249); (ii) positive straight leg raises on September 21, 2015 and July 18, 2016 (R. at 461, 465); (iii) decreased range of motion in the lumbar back on November 4, 2016 (R. at 347); and, (iv) tenderness on September 21, 2015, July 18, 2016, September 12, 2016, October 19, 2016, and November 4, 2016 (R. at 347, 461, 465, 467, 471).  (ECF No. 18, PageID.1122.) She also points to references of antalgic gait in July, October and December 2016 (R. at 465, 471, 476) and/or use of a cane in May, September and August 2016, and in February 2017 (R. at 331, 340, 467, 478).  (*Id*.)

However, there is support in the record for the ALJ's contrary conclusion. Preliminarily, as for Listing 1.04A's "[e]vidence of nerve root compression" with its various characterizations:  (i) the April 28, 2014 progress notes, which refer to a February 2011 back MRI that showed "questionable compression of the exiting left L4 nerve root[,]" (R. at 249), occurred well before the September 29, 2015 AOD; (ii) the September 29, 2015 lumbar spine MRI revealed "[m]ultilevel degenerative changes within the lumbar spine . . . , which have worsened at L2-L3 compared to prior study, and are otherwise stable" and "cholelithiasis" (R. at 308-309); and (iii) albeit after the December 31, 2016 DLI, a June 5, 2017 lumbar spine MRI revealed as to L2-3 "*inferior foraminal narrowing on the left greater than right but no exiting nerve root compression[,]*" as to L4-5 "*mild bilateral foraminal narrowing*

*but no exiting nerve root compression[,]"* and as to L5-S1 *"Mild to moderate bilateral foraminal narrowing is unchanged without exiting nerve root compression[,]"* (R. at 431-432, 505).[3]  Importantly, the ALJ cited the September 2015 MRI, which makes clear that she considered imaging from the relevant period – "[a] September 2015 magnetic resonance imaging scan . . . showed mild to moderate disc space narrowing in her lumbar spine . . . ."  (R. at 25, 308.)

Second, as for Listing 1.04C's requirement of an "inability to ambulate effectively," the ALJ cited several musculoskeletal records, albeit within the RFC determination, as follows:

> She routinely presents herself to her examiners at Henry Ford Hospital with limiting, but not disabling, musculoskeletal symptoms, often demonstrating full strength and range of motion in her back, neck, and extremities with normal gait and ambulation ([R. at 313, 317-318, 322, 351, 354, 358-359, **465, 467, 471, 476**]).  Despite stating that she requires a cane for ambulation both inside and outside her home, she has demonstrated normal ambulation without a cane ([R. at 476]).

(R. at 25 (emphasis added).)  Some of the cited records document musculoskeletal examinations, which reveal "normal range of motion," "no edema or tenderness," (R. at 313, 318, 322, 351, 354), or neurological examinations which reveal normal strength "throughout upper and lower extremities[,]" (R. at 359).  Other cited

---

[3] While it appears that Plaintiff was prescribed Norco in January 2018 for "[l]umbar nerve root disorder, [i]nvasive ductal carcinoma of left breast in female, [and] [m]uscle pain," (R. at 717), this is well past her DLI of December 31, 2016.

records – those upon which Plaintiff relies in this appeal – document

musculoskeletal examinations of a combined nature, such as antalgic but steady

gait, ambulation with a cane, and normal strength and tone to upper and lower

extremities (R. at 465), normal and steady gait and ambulation with a cane (R. at

467), "normal and steady/antalgic" gait and ambulation with a cane (R. at 471),

and "slightly antalgic" gait, ambulation without an assistive device, and "[n]ormal

strength and tone to upper and lower extremities[,]" (R. at 476).  Considering

Plaintiff's and the ALJ's citations to the records from July 18, 2016 (R. at 465),

September 12, 2016 (R. at 467), October 19, 2016 (R. at 471), and December 29,

2016 (R. at 476), Plaintiff's statement that "[t]he ALJ mentions *none of this*

*evidence*" is inaccurate.  (*Compare* ECF No. 18, PageID.1122 (emphasis in

original); *with* R. at 25 (bolded references above).)  More to the point, from the

record as a whole, the ALJ found "no evidence of nerve root compression with the

required characterizations, spinal arachnoiditis or lumbar spinal stenosis with

pseudoclaudication that results in inability to ambulate effectively[,]" (R. at 23),

making "sufficient factual findings elsewhere in his decision to support his

conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366

(6th Cir. 2014).[4]  *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is

---

[4] Although Plaintiff cites the April 2014 notes, which refer to a February 2011
back MRI (R. at 249), and the June 5, 2017 lumbar spine MRI (R. at 431-432, 505)
(ECF No. 18, PageID.1122-1123), she does not appear to argue that her

proper to read the ALJ's decision as a whole," and "it would be a needless

formality to have the ALJ repeat substantially similar factual analyses" in different

parts of the decision.); *see also Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528,

2014 WL 4537317, at *4 (E.D. Mich. Sept. 11, 2014) (Leitman, J.).

Finally, Plaintiff points to state agency medical consultant William

Rutherford, Jr., M.D.'s September 14, 2017, post-DLI opinions that:  (i) Plaintiff

"equals listing 1.04 with morbid obesity (BMI 55), cervical and lumbar DDD,

fibromyalgia, and recent dx of breast cancer[;]" (ii) Plaintiff "requires a cane to

ambulate and ADL's are significantly limited[;]" and, (iii) "[t]here is insufficient

evidence in file to determine the claimant's functional limitations during the period

in which they were last insured for benefits."  (R. at 88-89, 94-95 (emphasis

added)).  (ECF No. 18, PageID.1122-1123.)

To be certain, Dr. Rutherford reviewed several pieces of evidence, some of

which pre-date the alleged AOD (R. at 249, 229-235, 239-240, 241-243, 251-256,

296-298), some of which are from the relevant period (R. at 321-322, 331, 465),

and some of which post-date the DLI (R. at 382-384, 394-398, 424, 505, 441, 434-

---

impairments meet or equal Listing 1.04B, *i.e.*, "[s]pinal arachnoiditis, confirmed
by an operative note or pathology report of tissue biopsy, or by appropriate
medically acceptable imaging, manifested by severe burning or painful
dysesthesia, resulting in the need for changes in position or posture more than once
every 2 hours[.]"

444, 449-450).  (R. at 87-88, 93-94.)  Plaintiff contends that "it is entirely unclear as to what new evidence Dr. Rutherford was relying upon that was not evidenced as of Plaintiff's date last insured, just six months prior[,]" in support of which she notes that:  (i) she used a cane, was morbidly obese, and received "at least 7 different rounds of trigger point injections [TPIs]" before her December 31, 2016 DLI (R. at 331, 245, 310, 322, 468);[5] and, (ii) there was only slight progression from her September 29, 2015 MRI to her June 5, 2017 MRI (R. at 431-432, 505).  (ECF No. 18, PageID.1123; *see also* ECF No. 21, PageID.1164.)

But, Plaintiff's contention that "the consistency of the evidence prior to Plaintiff's DLI" and "the evidence Dr. Rutherford reviewed" support a finding that her impairment <u>equaled</u> Listing 1.04 "during the period in question[,]" (ECF No. 18, PageID.1123-1124) is unconvincing.  The Commissioner appropriately characterizes Dr. Rutherford's opinion as having "assessed *no limitations* during the relevant period[,]" (ECF No. 20, PageID.1147-1148 (emphasis in original)), as Dr. Rutherford also stated:  "*Currently*, claimant equals listing 1.04 with morbid obesity (BMI 55), cervical and lumbar DDD, fibromyalgia, and recent dx of breast

---

[5] As to TPIs, Plaintiff refers to a September 6, 2013 note, which reflects her report that she "had 6 injections to the back . . . ." (R. at 239).  Plaintiff appears to have received TPI, at least, on September 25, 2015 (R. at 310, 463-466), September 12, 2016 (R. at 342-344, 466-469), and December 2, 2016 (R. at 359, 473).  Also, Plaintiff suggests that she received TPI on October 19, 2016 (R. at 471).  (ECF No. 18, PageID.1117-1118.)  .

cancer.  She requires a cane to ambulate and ADL's are significantly limited."  (R. at 88, 94.)  Dr. Rutherford must have reached this finding based upon his review of the post-DLI records noted within his decision.  (R. at 88, 94.)  Similarly, at Step 3, the ALJ acknowledged Dr. Rutherford's opinion that Plaintiff's impairments "equaled listing 1.04[,]" presumably for evidence of nerve root compression (Listing 1.04A), but distinguished the assessment as referring to Plaintiff's "impairments after her date last insured."  (R. at 24, 88, 94, 97.)  To the extent Plaintiff's contention that she "should have been found to equal Listing 1.04 during the period in question" is based on "the consistency of the evidence prior to Plaintiff's DLI" and "the evidence Dr. Rutherford reviewed," (ECF No. 18, PageID.1124), this conclusory statement does not satisfy her "burden of demonstrating that her impairment meets or equals a listed impairment."  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  And, Plaintiff's reply does not aid this cause.  Although it sets forth the three ways in which the SSA can find medical equivalence, *see* 20 C.F.R. § 404.1526(b), it does not provide further development, such as which of the three medical equivalence tests she establishes, and states: "Plaintiff is simply highlighting the fact that the ALJ's perfunctory analysis of Listing 1.04 is even more problematic because essentially the same evidence supported a disability finding must months later."  (ECF No. 21, PageID.1163-1164).  As to Listing 1.04, the Undersigned concludes there was *not* a "lack of

articulation . . . ." (*Id.*)   Finally, whatever confusion there may be as to the basis of Dr. Rutherford's September 14, 2017 opinions, the ALJ's RFC determination acknowledges the state agency consultant's statement that "there was insufficient evidence to determine the claimant's functional limitations while claimant was insured ([R. at 88, 94])[,]" and assigns the opinion "little weight," because "there is sufficient evidence to support limiting the claimant to sedentary work with postural, environmental, and non-exertional limitations[,]" in support of which the ALJ cites multiple records, including several records from the relevant period that were not expressly listed by Dr. Rutherford (*compare* R. at 26, *with* R. at 87-88, 93-94).[6]   Thus, as the Commissioner notes, "the ALJ . . . adopted stricter limitations."  (ECF No. 20, PageID.1147.)

> **b.    Listing 1.02 - "Major dysfunction of a joint(s) (due to any cause)"**

The ALJ's decision does not expressly mention Listing 1.02.  Plaintiff argues that this was error, in support of which she cites:  (1) the May 2014 knee x-ray results, which "[r]edemonstrated . . . osteoarthrosis right knee with interval progression of medial compartment joint space narrowing which is now severe[,]"

---

[6] *See*, *e.g.*, September 29, 2015 lumbar spine MRI (R. at 308), February 23, 2016 progress notes (R. at 318), June 27, 2016 progress notes (R. at 337), August 11, 2016 progress notes (R. at 340), September 12, 2016 (R. at 343), and December 2, 2016 notes (R. at 357).  (R. at 26.)

(R. at 253); and, (2) the ALJ's discussion of obesity in regard to her lumbar spine impairment (R. at 23-25). (ECF No. 18, PageID.1124.)

To the extent Plaintiff argues that she meets or equals Listing 1.02 on the basis of her "severe knee arthritis[,]" (*id.*, PageID.1124), there would need to be "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]" Listing 1.02A.[7] As noted above with respect to 1.04C, the ALJ addressed ambulation within the RFC discussion by noting instances of "normal gait and ambulation," for which the support included records evidencing "antalgic but steady" or "normal and steady" or "normal and steady/antalgic" or "slightly antalgic," as well as whether Plaintiff was ambulating with or without a cane. (R. at 25, 465, 467, 471, 476; *see also* R. at 461 [September 21, 2015].) Nonetheless, the ALJ took into consideration Plaintiff's function report (R. at 205) and hearing testimony and, ultimately, found that Plaintiff's RFC contains multiple exertional (sedentary, sit-stand option, cane) and postural limitations ("occasionally balance

---

[7] Listing 1.04A is noted in the "Disability Determination and Transmittal" as to Plaintiff's SSI claim (R. at 97), and Dr. Rutherford's September 14, 2017 medical evaluation as to Plaintiff's SSI claim notes "[e]quals 1.04." (R. at 88; *see also* R. at 89, 94.) Therefore, the Court assumes that Dr. Rutherford made a typographical error when he stated, "[c]laimant equals *listing 1.02* with morbid obesity (BMI 55), cervical and lumbar DDD, fibromyalgia, and recent dx of breast cancer[,]" and "[s]he requires a cane to ambulate and AOL's are significantly limited[,]" (R. at 88 (emphasis added)), *i.e.*, he intended to refer to "listing 1.04."

on uneven terrain and slippery surfaces, stoop, kneel, crouch, crawl, and climb ramps and stairs but cannot climb ladders, ropes, or scaffolds"). (R. at 24-25.)

Moreover, as the Commissioner points out, "[i]n the normal course . . . the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013). (ECF No. 20, PageID.1148-1149.) It seems that Listing 1.04 was the only one specifically mentioned: (i) in the May 31, 2018 pre-hearing brief, which advocates that Plaintiff "*meets* listing 1.04 . . . [,]" (R. at 1036-1037 (emphasis added)); (ii) in Plaintiff's representative's June 5, 2018 addendum, which addresses whether Plaintiff's impairments *equal* Listing 1.04 (R. at 1039-1040); or, (iii) at the June 7, 2018 administrative hearing (R. at 38). The ALJ's November 5, 2018 RFC determination specifically refers to Plaintiff's briefed argument that "her various impairments *meet* listing 1.04[.]" (R. at 25 (emphasis added).) Additionally, the November 29, 2018 letter to the Appeals Council does not mention a specific listing number, although – without attribution – it refers to Dr. Rutherford's opinion. (R. at 170.) Thus, it appears that Plaintiff did not raise Listing 1.02 before the ALJ or the Appeals Council. In any event, while the Undersigned acknowledges Plaintiff's curiosity about the ALJ's failure to expressly address Listing 1.02 (*i.e.*, the ALJ considered obesity and her lumbar spine impairment via

Listing 1.04 but not her "severe knee arthritis" via Listing 1.02 (R. at 23-24)),

Plaintiff's related, single-paragraph argument, which contains only one express

citation – pre-September 29, 2015 (AOD) knee x-rays dated May 8, 2014 (R. at

253) – is insufficient to meet Plaintiff's burden at Step 3 that her "severe knee

arthritis" meets or equals Listing 1.02.  (ECF No. 18, PageID.1124.)

### c.        Summation

Contrary to Plaintiff's argument, the ALJ evaluated the evidence and

explained her conclusion in a manner that facilitates meaningful judicial review.  I

am satisfied that the ALJ provided enough analysis for this Court to trace her path

of reasoning, particularly in light of the opinion as a whole.  The ALJ clearly

articulated her reasoning, and Plaintiff has not convincingly shown that she meets

or equals Listings 1.04 or 1.02.  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)

("[f]or a claimant to qualify for benefits by showing that his unlisted impairment,

or combination of impairments, is 'equivalent' to a listed impairment, he must

present medical findings equal in severity to *all* the criteria for the one most similar

listed impairment."); 20 C.F.R. §§ 404.1526(a), 416.926(a) ("Your impairment(s)

is medically equivalent to a listed impairment in appendix 1 [of subpart P of part

404 of this chapter] if it is at least equal in severity and duration to the criteria of

any listed impairment.").

### 2.        The RFC

Plaintiff argues that ALJ Dietz "provided an RFC that was not supported by substantial evidence." (ECF No. 18, PageID.1124-1128; ECF No. 21, PageID.1164-1165.) Plaintiff contends that the RFC is "unsupported by any medical opinion," "bereft of any significant discussion of Plaintiff's medical history," and without "explanation as to how . . . the specific limitations" were derived, contrary to the narrative discussion requirement in SSR 96-8p, 1996 WL 374184, *7-*8 (S.S.A. July 2, 1996). (ECF No. 18, PageID.1125.) These arguments are unconvincing.

First, the ALJ's medical evidence review was sufficient. After conceding that Plaintiff experiences "obesity, disorders of the cervical and lumbar spine, chronic pain, and migraines[,]" she explains:

> She has been diagnosed with morbid obesity and has weighed as much as 314 pounds ([R. at 318]). A September 2015 magnetic resonance imaging scan (MRI) showed mild to moderate disc space narrowing in her lumbar spine ([R. at 308]). She has complained of neck pain ([R. at 357, 464]). She has been diagnosed with chronic pain syndrome and migraines ([R. at 318, 337, 343]). To treat her various impairments, she has been prescribed medication, attended physical therapy, received pain-controlling injections, and been prescribed a transcutaneous electrical nerve stimulation (TENS) unit ([R. at 254, 357, 465, 473]; [R. at 1025-1031]).

(R. at 25.) Then, the ALJ sets forth the RFC. (*Id.*)

Plaintiff takes issue with the brevity of this medical evidence review. (ECF No. 18, PageID.1126; ECF No. 21, PageID.1164-1165.) Yet, the relevant period at issue here is relatively brief – approximately 15 months (September 29, 2015 to

December 31, 2016).  Of the approximately 817 pages of medical records, it seems that only 170 are from the relevant period (R. at 308-477), and the above is a sampling of those, with the exception of records dated May 8, 2014 (R. at 254-255) and an updated list of 21 medications that appears to have been submitted on May 30, 2018 (R. at 1025-1031).

Second, the ALJ's explanation is sufficient.  Immediately after the above-quoted medical evidence review, the ALJ stated:

> Due to her impairments, she can perform sedentary work except that she can occasionally balance on uneven terrain and slippery surfaces, stoop, kneel, crouch, crawl, and climb ramps and stairs but cannot climb ladders, ropes, or scaffolds.  She must avoid all exposure to extreme cold, vibration/vibrating tools, and workplace hazards such as unprotected heights and moving mechanical parts. She requires an at-will sit-stand option at her workstation that does not take her off-task more than ten percent of the workday.  She requires a cane for ambulation to/from the workstation and for prolonged ambulation.  In the free hand, she can carry only nomi[m]al weights.

(R. at 25.)  Then, proceeding with what is fairly characterized as a subjective statement analysis, the ALJ discussed the "limiting, but not disabling, musculoskeletal symptoms," and the "demonstrat[ion] [of] normal ambulation without a cane[,]" as addressed in the foregoing discussion of Plaintiff's Step 3 argument.  (R. at 25 (citing R. at 313, 317-318, 322, 351, 354, 358-359, 465, 467, 471, 476).)  The Court agrees with the Commissioner that "[t]he ALJ's finding complied with both SSR 96-8p and *Delgado*."  (ECF No. 20, PageID.1151.)  *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (as to

19

whether the ALJ's opinion complied with SSR 96-8p, "the ALJ discussed the medical and other evidence on the disputed issues and explained the basis for his determination of Delgado's RFC.").  *See also Bencivengo v. Apfel*, No. C.A. 99-6135, 2000 WL 875684, at *2 (E.D. Pa. June 14, 2000) ("the ALJ did not need to make a function by function analysis to determine that the claimant was not disabled."), *aff'd sub nom. Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 2000 WL 1929759 (3d Cir. Dec. 19, 2000); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 929 (E.D. Mich. 2005) (Friedman, C.J., *accepting and adopting report and recommendation of* Pepe, M.J.) (quoting *Delgado* and *Bencivengo*).

Third, to the extent Plaintiff argues that the RFC is "unsupported by any medical opinion," (ECF No. 18, PageID.1125-1126), as the Commissioner points out, the RFC need not be "based on a medical opinion."  *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence").  (ECF No. 20, PageID.1153 n.5.)  As this Court has previously noted, "the social security statute does not contemplate a bright line rule

requiring the ALJ to base his or her RFC finding on a physician's opinion." *Gross v. Comm'r. of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) (citing *Rudd*). Moreover, when assigning Dr. Rutherford's opinion "little weight," the ALJ explained that there was "sufficient evidence to support limiting the claimant to sedentary work with postural, environmental, and non-exertional limitations[,]" for which she pointed to specific records. (R. at 26 (citing R. at 308, 318, 337, 340, 343, 357, 464)).

Finally, Plaintiff claims that the ALJ did not address limitations described in her testimony or explain why such limitations "were not reasonably consistent . . . [,]" and, thus, contends that "[t]he limitations appear arbitrary at best." (ECF No. 18, PageID.1126-1128.) Temporarily setting aside the analysis of Plaintiff's subjective statements, Plaintiff's allegation that the limitation of "an at-will sit-stand option at her workstation that does not take the claimant off-task more than ten percent of the workday" (R. at 24) is arbitrary (ECF No. 18, PageID.1127) is unavailing, because, as the Commissioner points out, when asked about December 2016 or earlier, Plaintiff testified that she could sit for "[a]t least about 15, 20 minutes" before she would need to change positions (R. at 64); also, she testified that she can stand "[a]bout 10 or 15 minutes" when standing with a cane (R. at 65). (ECF No. 20, PageID.1152.) In sum, the ALJ appropriately reviewed the medical evidence, appears to have accepted Plaintiff's testimony as to the exertional

21

limitation(s) of sitting and/or standing, and relied upon multiple supporting citations to explain the RFC's exertional, postural, environmental, and non-exertional limitations.  (R. at 25-26.)

### 3. Whether the ALJ appropriately evaluated Plaintiff's symptoms?

Plaintiff argues that ALJ Dietz's "assessment of Plaintiff's subjective symptoms was patently flawed[,]" namely as to pain and fatigue.  (ECF No. 18, PageID.1128-1132; ECF No. 21, PageID.1165-1168.)  The SSA acknowledges that "symptoms, such as pain, are subjective and difficult to quantify," and, thus, provides that "any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be *taken into account* as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled."  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (emphasis added).  The SSA will consider relevant factors, including:

    (i)     Your daily activities;

    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any
       medication you take or have taken to alleviate your pain or
       other symptoms;

(v)    Treatment, other than medication, you receive or have received
       for relief of your pain or other symptoms;

(vi)   Any measures you use or have used to relieve your pain or
       other symptoms (e.g., lying flat on your back, standing for 15 to
       20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning your functional limitations and
       restrictions due to pain or other symptoms.

(*Id*.)  Moreover, "[t]he determination or decision must contain specific reasons for

the weight given to the individual's symptoms, be consistent with and supported by

the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms."

SSR 16-3P, 2017 WL 5180304, *10 (S.S.A. Oct. 25, 2017).  *See also* SSR 16-3p,

2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016) (same).

       ALJ Dietz appropriately considered Plaintiff's subjective statements when

arriving at the conclusion that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of [the alleged] symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the

reasons explained in this decision."  (R. at 25-26.)  First, she considered "the extent

to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence[,]" 20 C.F.R. §§ 404.1529(a),

416.929(a), by noting "limiting, but not disabling, musculoskeletal symptoms,"

and the "demonstrat[ion] [of] normal ambulation without a cane[,]" (R. at 25, 476),

as already referenced in each of the foregoing statements of error.

Plaintiff's opposition on these points is not convincing. As for the ALJ's

observation of "limiting, but not disabling, musculoskeletal symptoms," (R. at 25,)

Plaintiff contends that the ALJ's assessment of the objective evidence is "based

solely upon her own lay review . . . [,]" and the ALJ "has no expertise to interpret

such evidence not does she even provide any explanation." (ECF No. 18,

PageID.1129-1130.) However, although "'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings[,]'"

*Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting

*Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996)), that is not what occurred here.[8]

As for the ALJ's observation that Plaintiff "has demonstrated normal ambulation

without a cane" (R. at 25, 476), Plaintiff contends this is "cherry-picking" and,

with respect to cane use, points to the same records cited in her Step 3 argument.

(ECF No. 18, PageID.1130, 1122.) But, the ALJ's immediately preceding

---

[8] *See also Newsome v. Sullivan*, 897 F.2d 529 (6th Cir. 1990) ("in weighing objective medical findings versus subjective statements of pain, the objective evidence is controlling absent objective medical evidence suggesting the existence of the pain.") (citations omitted); *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 246 (6th Cir. 2016) ("we read the ALJ's finding on this issue in the context of other record evidence, described above, that indicates Gibbens's degenerative disc disease has often been manageable.").

sentence acknowledged that Plaintiff often demonstrated normal musculoskeletal examinations.  (R. at 25, 313, 317-318, 322, 351, 354, 358-359, 465, 467, 471, 476.)  "We may not reweigh conflicting evidence on appeal[.]"  *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004).  Moreover, while Plaintiff questions the consistency of the ALJ's cane observation with the RFC's requirement of "a cane for ambulation to/from the workstation and for prolonged ambulation[,]" the ALJ appears to have given Plaintiff the benefit of the doubt, as she had earlier recognized Plaintiff's testimony that "she must lean on the counter when doing dishes and requires a cane to ambulate around her home and outside." (R. at 24-25; *see also*, *e.g.*, R. at 42-44, 51, 55, 64-65, 67-68.)

Second, the ALJ recognized that Plaintiff's "daily functioning is less limited than one could reasonably expect, considering the alleged severity of her impairments[,]" and further explained:

> She reported that she prepares meals, does household chores, shops in stores, and runs errands ([R. at 202-203]).  She drives an automobile, suggesting that she has the physical strength, stamina, and dexterity to open the vehicle door, manipulate the keys, turn the steering wheel, sit in the driver's seat, and operate the pedals ([R. at 203]; [Hearing Testimony]).

(R. at 25-26.)  Plaintiff takes issue with the ALJ's treatment of her "daily functioning," arguing, in part, that she "grossly misrepresented Plaintiff's activities," *i.e.*, "exclude[d] all mention of the limitations that Plaintiff has in performing such activities . . . ."  (ECF No. 18, PageID.1131-1132.)  However, the

matters upon which Plaintiff relies – her testimony that she does laundry in "small bunches" (R. at 43-44), her testimony that her mother or brother "will go with [her] to do the grocery shopping[,]" to "lift or reach . . . whatever [she] can't get[,]" (R. at 44-45), and her function report as to personal care (R. at 201) – do not illustrate how the ALJ's interpretation of Plaintiff's function report – as to meals, house and yard work, getting around, and shopping (R. at 201-203) – was errant or misleading.[9]

Finally, in addition to determining at Step 2 that Plaintiff's "chronic pain" was a severe impairment and discussing "chronic pain" at Step 3 (R. at 23-24), the ALJ made multiple references to "pain" within the RFC discussion (R. at 25). In sum, the ALJ's consideration of Plaintiff's subjective statements was appropriate.

## F.    Conclusion

Plaintiff has not satisfied her burden to overturn the ALJ's conclusions at Step 2, within the RFC assessment, or with respect to her symptoms. *Walters,* 127 F.3d at 529. Accordingly, as detailed in the foregoing discussion, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

---

[9] Plaintiff listed laundry, ironing, washing dishes, and cleaning house as household chores she is "able to do." (R. at 202.) She also listed "reading, watching TV, going to the movies, concerts, plays" and "going to the library" as hobbies and interests that are done every day, or "whenever it's possible[,]" except for watching TV, which "depends on [the] day." (R. at 204.)

judgment or remand (ECF No. 18), **GRANT** Defendant's cross-motion for

summary judgment (ECF No. 20), and **AFFIRM** the Commissioner's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days after being

served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after being served

with a copy of an objection, the opposing party may file a concise response

proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2);

E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised

in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," *etc.*  If the Court determines that any objections are

without merit, it may rule without awaiting the response.


Dated:   February 17, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE